Erin Rose Ronstadt, SBN 028362
Kevin Koelbel, SBN 016599
OBER & PEKAS, PLLC
3030 N. 3rd Street, Suite 1230
Phoenix AZ 85012
Phone: (602) 277-1745
Fax: (602) 761-4443
erin@oberpekas.com
kevin@oberpekas.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angela Kaminski, a married woman, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Banner Health Master Health and Welfare Benefits Plan, an ERISA benefit plan; Life Insurance Company of North America, a plan fiduciary; and Banner Health, a plan administrator, | |
| Defendants. | |

For her claims against Banner Health Master Health and Welfare Benefits Plan (the "Plan"), Life Insurance Company of North America ("LINA" or "CIGNA"), and Banner Health ("Banner") (collectively, "Defendants"), Plaintiff Angela Kaminski ("Ms. Kaminski" or "Plaintiff") alleges as follows:

## JURISDICTION, VENUE AND PARTIES

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. Ms. Kaminski was a participant and beneficiary of the Plan as an employee of Banner.

3. Ms. Kaminski is a married woman, currently residing in Maricopa County, Arizona and has been a resident of Maricopa County at all times since becoming a Plan participant.

4. The Plan and Banner Health have their principal place of business in the state of

Arizona.

5. LINA has its principal place of business in the state of Pennsylvania.

6. Defendants are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

7. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

8. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

9. The Plan is a purported ERISA benefit plan established and maintained by Banner Health for the benefit of its employees.

10. Banner is the Plan Sponsor, a Plan Administrator, and a Plan fiduciary.

11. Banner fully insures long-term disability ("LTD") benefits under the Plan with a policy, Number LK980211 (the "Policy").

12. Banner has identified the Banner Health Master Health and Welfare Benefits Plan effective January 1, 2014 as the "LTD Plan."

13. LINA administered claims under the name CIGNA.

14. LINA is a Plan fiduciary.

15. LINA is domiciled in the Commonwealth of Pennsylvania and the State of Connecticut and is a wholly owned subsidiary of CG Corporation, a Connecticut holding company. CG Corporation is in turn a wholly owned subsidiary of CIGNA Holdings, Inc., a Delaware holding company. The parent company of CIGNA Holdings, Inc. is CIGNA Corporation, a Delaware holding company.

16. LINA and Banner are licensed and authorized to do business in Maricopa County, Arizona, and reside and are found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

17. This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201 and 2202.

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ  85012
(602) 277-1745

18. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

### *The Plan Terms*

19. The Health and Welfare Plan Committee has discretionary authority to administer the Plan and to delegate its discretionary authority.

20. The Committee designated Banner Health as the Plan Administrator.

21. The Plan allows Banner Health to delegate responsibility to carry out duties assigned to the Plan Administrator.

22. The Plan delegates to Claims and Appeals Administrators discretionary responsibility for claims and appeals under the applicable Benefit Program.

23. The Plan reserves to Banner Health the sole discretion to construe and interpret the Plan and Benefit Programs (including any ambiguities) and decide all questions of fact.

24. The only discretion provided to LINA in the LTD Policy is the discretion to approve participation in a Rehabilitation Plan and to approve a program as a Rehabilitation Plan.

25. In order to meet the definition of Disability under the LTD Policy after Disability Benefits have been payable for 24 months (the "Any Occupation period"), Ms. Kaminski must prove that "solely because of Injury of Sickness" she is "unable to perform the material duties of any occupation for which she is, or may reasonably become, qualified based on education, training, or experience," and "unable to earn 80% or more of her Indexed Earnings.

26. Indexed Earnings are defined as Covered Earnings (the base wage or salary in effect just prior to the date of disability) increased by annually be the lesser of 10% or the Consumer Price Index.

### *Ms. Kaminski's Disabilities*

27. Ms. Kaminski suffers from multiple sclerosis ("MS"), optical neuritis, and degenerative disc disease ("DDD").

28.   Ms. Kaminski suffers from relapsing-remitting MS, a chronic, incurable, and often disabling disease that affects the central nervous system.

29.   Ms. Kaminiski experiences significant symptoms from her MS.

30.   One of her treating physicians, Dr. Patterson, explained to LINA that since her diagnosis of MS in 2008, she has experienced multiple exacerbations (the most recent was September 1, 2016) resulting in:

> additional symptoms of paresthesia in her midthoracic region and optical neuritis. With her current exacerbation, she is experiencing more right-sided symptoms. She continues to have significant cramping, weakness, spasticity, and clumsiness of the hands, as well as leg weakness. She has experienced a few falls recently. She has ongoing, chronic, severe fatigue and intermittent bladder urgency. She has decreased vision and eye pain from optical neuritis.

31.   Ms. Kaminski's MS diagnosis is supported by objective findings including multiple MRIs and physical examinations.

32.   On June 29, 2016, another of Ms. Kaminski's treating physicians, Dr. Mengesha, reported to LINA that Ms. Kaminski is completely incapacitated by MS.

33.   On April 18, 2017, Dr. Patterson confirmed that Ms. Kaminski is unable to work even in a sedentary capacity due to fatigue, decreased stamina, upper and lower extremity weakness, inability to drive, inability to lift over 5 pounds, inability to perform fine manipulation, handling, grasping, or keyboarding, and difficulty with concentration, memory, and mental fatigue.

34.   On April 27, 2017, Dr. Mengesha confirmed that Ms. Kaminski cannot sustain any type of full-time work.

35.   There is no cure for MS.

36.   Ms. Kaminski's MS treatment only tries to manage symptoms and slow the disease's progression.

37.   Ms. Kaminski's DDD is severe and complicates her MS.

38.   Diagnosis of her DDD is supported by objective medical evidence including MRIs and physical examinations.

39.   Her DDD contributes to her muscle weakness, sensory loss, decreased range of

-4-

motion, and tenderness.

40. Ms. Kaminski treats with Dr. Marc Soloman to help manage her pain.

41. Ms. Kaminski is incapable of working in any capacity; she has less than sedentary physical capacity.

### *Ms. Kaminski' Employment*

42. Banner Health employed Ms. Kaminski as registered nurse for nearly twenty years.

43. Ms. Kaminski's last full day of work as a registered nurse was April 25, 2014.

44. The job of registered nurse is a medium-duty job.

45. Between April 2, 2015 and June 20, 2015, Ms. Kaminski tried to return to work in a light-duty position without success.

46. Ms. Kaminski's attempt to return to work exacerbated her condition requiring an emergency room visit.

### *Vocational and Functional Capacity Analyses*

47. On April 13, 2017, Mark Kelman, MS, CRC, CVE assessed Ms. Kaminski's vocational capabilities with an in-person interview, testing, and review of LINA's file.

48. Mr. Kelman found Ms. Kaminski's gross hand and arm movements and fine finger dexterity well below the lowest established norms.

49. Mr. Kelman concluded Ms. Kaminski is not competitively employable and does not have bilateral fingering ability to do keyboarding, which is essential to the jobs of Nurse Consultant and Telephone Nurse Case Manager.

50. Sandy Goldstein, PT, CDMS performed a Functional Capacity Examination ("FCE") of of Ms. Kaminski on April 20, 2017.

51. Mr. Goldstein found: Ms. Kaminski is unable to sustain a competitive work pace due to deteriorated physical condition; she has no functional use of her hands, and less than sedentary work capacity due to pain and fatigue.

*The Claims Handling*

52. LINA paid LTD benefits through October 24, 2016, which was the end of the Own Occupation period.

53. On September 12, 2016, LINA "escalated" Ms. Kaminski's claim to a Nurse Case Manager.

54. The Nurse Case Manager ("NCM") noted that all of Ms. Kaminski's treating physicians agreed that Ms. Kaminski is incapacitated by MS. The NCM did not dispute the diagnoses just the restrictions and limitations and suggested that the file should be reviewed by a neurologist.

55. LINA did not have Ms. Kaminski examined.

56. LINA had its employee, Dr. Teitel, review parts of Ms. Kaminski's file.

57. Dr. Teitel did not consider all the available evidence, including the FCE video.

58. LINA prepared a Transferable Skill Analysis based solely on Dr. Teitel's file review.

59. Dr. Teitel rejected the treating physician's opinions based for lack of strength measurements, ignoring that this information was in the FCE, and that the treating physicians performed multiple physical examination documenting Ms. Kaminski's restrictions and limitations.

60. LINA also ignored the Social Security Administration's ("SSA's") fully favorable award of Social Security Disability Insurance ("SSDI") benefits but then later, on two separate occasions, attempted to collect an overpayment from Ms. Kaminski after it had terminated her LTD benefits.

61. The SSA found Ms. Kaminski disabled as of her last day of work on April 26, 2014.

62. Under the SSA, Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that is of "such severity that [the claimant]. . . cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

OBER & PEKAS, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

economy, regardless of whether such work exists in the immediate area in which [she] lives." See 42 U.S.C. §423(d)(l)(A), (2)(A).

63. The SSA determined that Ms. Kaminski has less-than-sedentary work capacity and cannot sustain a 40-hour workweek.

64. The SSA determined medical improvement is not expected.

65. The SSA's determination is based on objective medical evidence.

66. The SSA also relied on an independent consultative examiner, Dr. Ernest Griffith, who concluded:

> Claimant is experiencing persistent disorganization of motor function tremor, involuntary movement, and reproducible fatigue of motor function with substantial weakness as demonstrated on physical examination resulting in neurological dysfunction due to multiple sclerosis that are consistent with listing 11.09C.

67. Medical listing 11.09C is defined as:

> [s]ignificant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process. Use of the criteria in 11.09C is dependent upon (1) documenting a diagnosis of multiple sclerosis, (2) obtaining a description of fatigue considered to be characteristic of multiple sclerosis, and (3) obtaining evidence that the system has actually become fatigued. The evaluation of the magnitude of the impairment must consider the degree of exercise and the severity of the resulting muscle weakness.

68. Although Ms. Kaminski provided all the information LINA identified as necessary to "perfect her claim," in a September 23, 2016 letter, LINA terminated LTD benefits at the start of the Any Occupation period effective October 26, 2016, claiming she could work as a Nurse Consultant or Telephone Nurse Case Manager.

69. LINA did not properly address the medical evidence.

70. LINA's determination that Ms. Kaminski can work as a Nurse Consultant or Telephone Nurse Case Manager is incorrect.

71. Through the assistance of legal counsel, Ms. Kaminski appealed LINA's adverse benefit determination on May 22, 2017 (the "Appeal").

72. The Appeal was replete with more than enough information to support

continued Disability, including updated medical records; an April 20, 2017 Functional Capacity Evaluation ("FCE") report by Sandy Goldstein, PT, CDMS; an April 14, 2017 Vocational Report by Mark Kelman, MS, CRC, CVE; and supporting letters from Ms. Kaminski's physicians.

73. In a June 5, 2017 letter, LINA requested a 45-day extension of time to review the Appeal in order to consult a health care professional and identified this request as a "special circumstance" under the ERISA regulations.

74. On June 12, 2015, Ms. Kaminski's counsel rejected LINA's request, because a request for an extension of time to conduct procedures that should already have been followed is not a "special circumstance."

75. LINA sent another letter on July 3, 2017 ignoring our rejection for additional time, advising that it would need additional time to allow peer reviews of Ms. Kaminski's entire file, and again labeling its excuse as a "special circumstance."

76. On July 11, 2017, two peer reviewers from LINA's third party vendor, Professional Disability Associates ("PDA"), contacted Ms. Kaminski's counsel's office – one of which explained that his report was due to PDA/LINA within four (4) business days and demanded immediate discussions with two of Ms. Kaminski's physicians.

77. Despite Ms. Kaminski's counsel's efforts to accommodate the peer reviewers' demands, it was impossible to arrange these last-minute discussions, as Ms. Kaminski's physicians were either unwilling or unavailable to speak on such an unreasonable timeline.

78. As a result, Ms. Kaminski's treating providers directed the peer reviewers to read the letters provided with her Appeal, and her counsel further referred the peer reviewers to review the FCE.

79. PDA's peer reviewers abandoned their efforts to communicate with Ms. Kaminski's treating providers and hastily issued biased reports that favored a termination of benefits.

80. Furthermore, LINA failed to provide Ms. Kaminski's complete file and Appeal submission to the peer reviewers, making their reports anything but "objective and

independent" as LINA asserted.

81. LINA used the peer reviewers' reports as a basis to uphold its prior decision to terminate Ms. Kaminski's LTD benefits.

82. Ms. Kaminski has exhausted her administrative remedies and timely brings this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(Defendants LINA and the Plan)**

83. All other paragraphs are incorporated by reference.

84. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

85. The Plan represents LTD coverage and a promise to provide LTD benefits until Ms. Kaminski is no longer Disabled under the terms of the Plan.

86. Ms. Kaminski is Disabled from Any Occupation.

87. Ms. Kaminski has claimed the benefits under the Plan to which she is entitled.

88. Ms. Kaminski reasonably expected that her medical conditions met the requirements of Disability as defined by the Plan and that she would receive benefits under the Plan until she reaches age 65 or until he was no longer disabled.

89. Despite the coverage of Ms. Kaminski's Disability, LINA and the Plan improperly terminated her LTD benefits in breach of the Plan and ERISA.

90. LINA's and the Plan's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

91. Ms. Kaminski's plan is entitled to *de novo* review because the LTD Plan does not properly delegate discretionary authority to LINA.

92. Alternatively, given LINA's wholesale and flagrant procedural violations of ERISA, Ms. Kaminski should be entitled to *de novo* review of her claim. *See Halo v. Yale Health Plan,* 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan

has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

93. In terminating Ms. Kaminski's LTD benefits, LINA ignored credible medical evidence, which supported her continuing eligibility for benefits.

94. LINA unreasonably credited unreliable evidence over reliable evidence in its administration and review of Ms. Kaminski's LTD claim, making its determination contrary to the clear weight of the medical evidence.

95. LINA deliberately conducted biased investigations. It avoided and unreasonably failed to review all of the medical evidence fully and fairly in an effort to avoid further financial liability on her claim.

96. Because of LINA's improper conduct, Ms. Kaminski was denied a full and fair review of her claim.

97. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Ms. Kaminski is informed and believes that LINA makes claims decisions based on the claims resources and financial risk it faces on certain claims.

98. LINA wrongfully terminated Ms. Kaminksi's LTD benefits without providing a coherent explanation for its termination, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. §§ 1109, 1132.

99. LINA did not properly consider all of the available evidence when terminating Ms. Kaminski's LTD benefits.

100. On information and belief, LINA's employees were financially incentivized to terminate Ms. Kaminski's LTD benefits.

101. LINA relied on findings that constitute "clearly erroneous findings of fact" to terminate Ms. Kaminski's LTD benefits.

102. Upon information and belief, LINA provided its reviewers and vendors with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

103. LINA routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

104. LINA failed to properly consider the opinions of Ms. Kaminski's treating and examining physicians.

105. LINA cherry-picked Ms. Kaminski's medical records to create a selective and incomplete rendition of Ms. Kaminski's medical history.

106. In terminating Ms. Kaminski's LTD benefits, LINA completely disregarded evidence that Ms. Kaminski's conditions had not changed or improved, and had in fact, deteriorated.

107. LINA has no evidence that Ms. Kaminski's conditions changed or improved since it determined that she met the definition of Disability in the Policy.

108. Upon information and belief, LINA used in-house reviewers in evaluating Ms. Kaminski's claim, because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of her LTD benefits.

109. The peer reviewers arbitrarily reached their opinions based on insufficient evidence or investigation.

110. LINA's reviewing physician did not set forth any substantive reasons why Ms. Kaminski's treating doctors' opinions were incorrect.

111. LINA failed to explain why it credited the physician reviewers over Ms. Kaminski's treating physicians.

112. LINA failed to adequately explain it disregard of the SSA's findings.

113. The peer reviewers were not given the Plan or other important records for reaching its decision that Ms. Kaminski could perform work.

114. LINA's procedural irregularities include but are not limited to: behaving as an adversary bent on denying her claims; impermissibly "cherry picking" only evidence favorable to LINA from Ms. Kaminski's files; failing to credit Ms. Kaminski's subjective complaints and improperly demanding objective evidence.

115. LINA had significant financial conflicts of interest with respect to handling,

monitoring, and eventually terminating Ms. Kaminski's LTD benefits.

116.   LINA has a parsimonious claims handling history generally and specifically with respect to Ms. Kaminski's claim.

117.   LINA failed to conduct a "meaningful dialogue" regarding Ms. Kaminski's claim.

118.   Under the *de novo* standard of review, to be entitled to benefits Ms. Kaminski need only prove by a preponderance of the evidence that she is disabled.

119.   Even under the abuse of discretion standard of review, LINA abused its discretion, because its decision to terminate Ms. Kaminski's LTD benefits was arbitrary and capricious and was caused or influenced by LINA's, its reviewing physicians', and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

120.   Ms. Kaminski is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process and also regarding the effects of LINA's reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Ms. Kaminski's LTD benefits.

121.   Under the *de novo* standard of review, Ms. Kaminski is entitled to discovery regarding, among other things, the credibility of LINA's medical reviews and LINA's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo LINA of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

122.   Pursuant to the coverage provided in the Plan, ERISA 29 U.S.C. § 1132(a)(1)(B), and applicable federal law, Ms. Kaminski is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

123.   Ms. Kaminski is entitled to reinstatement of any other employee benefits that

were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

124. Pursuant to 29 U.S.C. § 1132(g), Ms. Kaminski is entitled to recover her attorneys' fees and costs incurred herein.

125. Ms. Kaminski is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**WHEREFORE**, Ms. Kaminski prays for the following equitable relief:

A. All past LTD benefits due under the terms of the Plan;

B. An award of interest on all past due benefits;

C. An award of Ms. Kaminski's attorneys' fees and costs incurred herein;

D. For such and further relief as the Court deems just, equitable, and reasonable.

Dated this 7th day of December, 2017.

       OBER & PEKAS, PLLC

       By: *s/ Erin Rose Ronstadt*
         Erin Rose Ronstadt
         Kevin Koelbel
         Attorneys for Plaintiff

**OBER & PEKAS, PLLC**
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745